J. D. TAYLOR, MAMIE S. TAYLOR, JESSIE TAYLOR FAULKNER
BY HER NEXT FRIEND J. D. TAYLOR, A. J. FAULKNER, HER
HUSBAND, HORACE J. TAYLOR, A MINOR, MAUD E. TAYLOR,
A MINOR, OSSIE M. TAYLOR, A MINOR, FRANCIS W. TAYLOR, A MINOR, AND LOUISE M. TAYLOR, ALL SUING BY THEIR
NEXT FRIEND J. D. TAYLOR, AND ALICE KIMBROUGH AS
ADMINISTRATRIX OF THE ESTATE OF ELIZA KIMBROUGH,
DECEASED, APPELLANTS, VS. GLENS FALLS INSURANCE
COMPANY, A CORPORATION, &C, APPELLEE.

INSURANCE—REFORMATION OF POLICY IN EQUITY—CANCELLATION OF POLICY—PARTIES TO SUIT ON POLICY—
WAIVER OF PROOF OF LOSS—LIMITATIONS OF SUIT ON.

1. Where a policy of fire insurance is made payable to the party
   in whose name the legal title stood to the property insured, such party being dead at the time of the execution
   of such policy, no recovery at law can be had upon such
   policy by the heirs at law of such deceased party without
   a reformation thereof in equity.

2. Where husband and wife with their children reside in a
   house the legal title to which stands in the name of the

18 S. C.

wife, and an agent of a fire insurance company for years
during the lifetime of the wife deals exclusively with the
husband in effecting insurance of such house, the policies
being always made payable to the wife, and the wife dies,
and the husband with their children continue thereafter
to occupy and reside in the said house, and the said agent
of the said insurance company, after having knowledge
of the death of said wife, in response to a request from
the said husband to renew the insurance of said property,
subsequently to the death of said wife issues a policy on
the said house making it payable as before to her, and re-
ceives from the husband and retains the regular premium
for such insurance, and it appears that such policy was so
made payable by such agent through his mistake, inadver-
tence and momentary forgetfulness of the fact that the
wife to whom it was made payable was at the time dead;
and that the husband relied entirely upon the said agent
for the issuance of a valid policy; and the property is
destroyed by fire during the life of such policy, and the
husband and other heirs at law of such deceased wife
have had no knowledge as to whom such policy was made
payable, none of them ever having seen the same or had
access thereto since its execution, such policy, under these
circumstances, will be reformed in equity so as to make
the same payable to the heirs at law of such deceased
wife, and recovery can be had thereon in equity as part
of the relief in the suit for reformation in favor of such
heirs at law.

3. The failure of the insured to read a policy of insurance, even
where he has opportunity for so doing, does not amount
to such laches on his part as will debar him from having
such policy reformed for mistake therein.

4. Where a policy of fire insurance provides that no recovery
can be had thereon unless suit thereon was brought within
a year from the destruction of the property, and a suit at
law is brought thereon within such year and such suit re-
sults properly in a non-suit by reason of a mistake in the

Taylor et al. v. Glens Falls Insurance Co.—Syllabus.

name of the party to whom such policy was made paya-
ble, which mistake was discovered at the trial of such
suit at law by the plaintiffs for the first time, the agent of
the insurance company having prior to the fire wrongfully
obtained possession of the policy, and having wilfully
withheld it and all information as to its terms and condi-
tions from the parties bringing such suit at law thereon,
and the said party or parties immediately after such non-
suit, but after the lapse of a year from the destruction of
the property, file their bill in equity for reformation    of
such policy and for recovery thereon as reformed, under
these circumstances: Held, that the limitation    provided
for by the policy was effectually avoided, and that such
suit in equity could be maintained notwithstanding    such
limitation.

5. Where a policy of fire insurance is made payable in part con-
ditionally to a mortgagee of the prpoerty insured who has
been given possession of such policy, and the agent of the
company issuing it, without giving the five days    notice
provided for in such policy of this intention    to    cancel
same, and without the knowledge or consent of the    real
beneficiaries of    such    policy,    obtains    the    possession
thereof from the daughter of such mortgagee during the
latter's absence, returning to her the then unearned **pro
rata**, part of the premium receeived therefor, such **mort-
gagee** nor her daughter being authorized by the real bene-
ficiaries of the policy to receive such returned    unearned
premium or to consent to a cancellation thereof, and such
agent attempts under these circumstances to cancel said
policy without the knowledge or consent of the real bene-
**ficiaries** of such policy, and the property insured is de-
stroyed by fire within three days after such attempted
cancellation: Held, that such attempted cancellation of
such policy is a nullity, and that the insurance    company
was not thereby released from obligation to pay the subse-
quent loss.

6. Where a policy of fire insurance is made conditionally **paya-
**ble to a mortgagee of the property insured, whose    mort-

gage debt is for much less than the amount of the policy, such mortgagee, or if dead, his personal representatives, are not only proper, but necessary parties, conjointly with the other beneficiaries of such policy, to a bill in equity for reformation of a mistake in such policy and for recovery thereon as reformed, and the decree in such suit may properly adjust between the complainants their respective interests in the recovery thereon.

7. A fire insurance company by unconditionally denying any liability whatsoever on its policy upon the destruction of the property covered thereby waives proofs of loss provided for in such policy.

Appeal from the Circuit Court for Orange County.

### STATEMENT.

The appellants filed their bill in equity on March 25th, 1897, in the Circuit Court of Orange county against the appellee alleging as follows: That Eudora O. Taylor, wife of said J. D. Taylor, was prior to this suit the owner of a certain two-story frame building at Winter Park in said county, known as the "Lemay" building, then and since used as a residence for said Eudora and J. D. Taylor and their family, of the value of about $4,500, and which building was in the full care, custody and control of said J. D. Taylor during the lifetime of his said wife and since; that pursuant to such control said J. D. Taylor had from and since 1891, and until 1894, procured insurance on said building against loss by fire. Prior to 1894 the amount of insurance was $2,500, one-half of which was placed in the defendant company, the Glens Falls Insurance Company, through one W. F. Barnes, then and now the agent of said company; that in 1891 said Barnes visited and inspected the premises, acting for a Mrs. Eliza

Kimbrough, and placed a loan of $400 on the property for her, said J. D. Taylor and wife Eudora joining in a note and mortgage on said property to secure said loan of $400. Said Barnes insured said premises for that year in the name of Eudora O. Taylor as owner, $1,250 of said insurance being placed in defendant company and payable to said mortgagee as her interest should appear; that said Eudora died November 19th, 1892, intestate, leaving as heirs' at law her husband and the children mentioned as complainants, and all continued to occupy said residence, and said J. D. Taylor continued in control thereof and was duly appointed administrator of decedent's estate. Public notice of the death of said Eudora and of the appointment of said J. D. Taylor were made according to law in said county. At the expiration of the policy of insurance of $1,250, in defendant company on November 13th, 1893, said J. D. Taylor requested said Barnes to renew same; that at the time said Taylor believed and had good reason to believe that said Barnes knew of the death of said Eudora, and that relying upon this knowledge and depending upon the skill and knowledge of said Barnes as said agent of defendant company to properly write said policy of insurance, of which he, the said J. D. Taylor, was wholly ignorant, he gave said Barnes no instructions whatever as to what name as owner should be inserted therein; that afterwards it appeared that said Barnes either had no knowledge of the death of said Eudora or had forgotten this fact, and thus by the inadvertence, accident and mistake of said J. D. Taylor and said Barnes and by the error of said Barnes, said insurance on said building in said defendant company was renewed in the name of Eudora Taylor as owner, she being then dead, and not in the name of her estate or of the heirs of the

estate of said Eudora or of her said husband as adminis-
trator or trustee or agent, or in such manner and form
as was proper, and as said J. D. Taylor then and since
supposed said policy to have been written until just be-
fore the bringing of this suit, he not having read said
policy by accident and inadvertence. And that on No-
vember 13th, 1894, said J. D. Taylor again requested said
Barnes as agent of said defendant company to renew said
insurance in said company, and not having discovered the
error in the expiring policy and still believing said Barnes
knew of the death of said Eudora, and being ignorant of
the proper manner and form of writing said policy, he,
the said J. D. Taylor, gave no other instructions to said
agent but a request for such renewal, wholly relying on
and trusting him to properly write said policy, but expect-
ing and intending that said policy should be written, not
in the name of said Eudora O. Taylor, deceased, but of
said J. D. Taylor as agent or trustee or administrator of
her estate, or in the names of the heirs of her estate, or
as should be fit and proper to write the same. The prem-
ium for said insurance amounting to $48.75 was advanced
for and loaned to said J. D. Taylor by said Eliza Kim-
brough mortgagee, and paid to said agent, and said insur-
ance in case of loss was payable conditionally to her as
mortgagee and said policy was issued by said agent for
one year from November 13th, 1894, and delivered to said
mortgagee or held by him as agent for said Mrs. Kim-
brough (he then having other policies in his possession of
said mortgagee as her agent), so that said J. D. Taylor
did not see said policy (a substantial copy of which policy
was attached to the bill, complainants alleging that the
defendant company had previously procured possession of
the original and refused to deliver it to the complainants

or a copy thereof, or to disclose its contents) ; that on the sixteenth of May, 1895, said agent called on M'ss Alice Kimbrough, a daughter of said Eliza, and informed her that the defendant company had directed him to cancel said contract of insurance and to return the *pro rata* of unearned premium, and handed her $24.35, representing same to be the said amount of unearned premium; and said agent did thereupon return said policy to said defendant company (the same then being in his possession as agent for said mortgagee) ; that said Alice, through ignorance, accepted said money and reported same to her mother, but did not inform J. D. Taylor nor any of said complainants, that neither said Alice nor her mother, the said Eliza, had any knowledge that the terms of said policy provided that on cancelling same by the company five days notice should be given the insured, nor did either intend by receiving said money to waive such provision, and nether was in any regard the agent of said J. D. Taylor or any of said complainants respecting said insurance, nor had either any authority to assent to such cancellation, or to receive said unearned premium for complainants, nor did either so intend; that on the nineteenth of May, 1895, about one o'clock at night, and less than three days after the pretended cancellation, said building was totally consumed by fire, said fire having originated in an adjoining building and the cause thereof as unknown to complainants; that immediately after the said burning of said buildings, to-wit: on said nineteenth of May, said J. D. Taylor called on said Eliza and Alice Kimbrough for the said policy of insurance (having sometime previously been informed by said agent that it was in their custody), and learned for the first time of the pretended cancellation of said policy. Said Taylor

then caled upon said agent and stated the loss of said building by said fire, whereupon said agent then and there informed him that the policy had been canceled, and that the defendant company refused to pay the same and denied all liability thereunder; that all efforts of said Taylor to procure a return of said policy from defendant company, or to secure from them a copy thereof or information of its contents wholly failed, though every legal effort was made so to do; that suit was brought against defendant company in the Circuit Court of said Orange county on said contract of insurance, and in the trial thereof it appeared by the sworn testimony of said agent Barnes, that said policy had been by him, through inadvertence and mistake written in the name of Eudora Taylor, she being at the time deceased. Whereupon the judge held that said policy could not be sued upon in said action and plaintiff was then and there forced to take a non-suit; that this suit in equity was therefore brought to reform and enforce said contract, there being no other adequate remedy; that said Eliza Kimbrough had died and said Alice duly appointed her administratrix and was joined as a complainant because of the said interest as motgagee; that said Alice had prior to this suit tendered to said agent of said defendant company a return of the amount of the unearned premium paid her but which offer was refused, and she was still ready to but which offer was refgused, and she was still ready to pay same; that said policy of insurance contained a provision that in case of loss by fire suit should be commenced within twelve months from such fire; that suit had so been commenced as already stated, but ended in a non-suit as alleged; that the enforcement of such provision would in this case be inequitable as against these

complainants; that the error in said policy had only been recently discovered and since the expiration of said limitation; that said error was the fault of the defendant company; that the defendant company had by its refusal to give to complainants said policy or a copy thereof, or information of its contents, prevented them from sooner ascertaining said error and that said provision was not of the essence of said contract, and that complainants were in no wise in default herein, other than by reason of the error and mistake of defendant company. The prayer was to reform the contract so it should read in the name of heirs of the estate of said Eudora O. Taylor, and same as reformed be enforced against defendant, also a prayer for general relief. The policy of insurance is stated to be for $1,250, issued by defendant company in name of Eudora O. Taylor for one year from November 14th, 1894, to November 14th, 1895, insuring against loss by fire the building already referred to as the "Lemay" building in Winter Park, Florida, loss if any conditionally payable to Eliza Kimbrough, mortgagee, providing, among other things, that the policy should be void if the insured concealed or misrepresented any material fact or circumstance connected with such insurance, or if the interest of the insured in the property be not truly stated therein that the company might cancel said policy by giving five days notice of such cancellation and retaining only the *pro rata* premium; that immediate notice of loss should be given to the company in writing; that no suit or action on the policy should be sustained in any court of law or equity until after full compliance with all the requirements of the policy, nor unless commenced within twelve months next after the fire.

To the bill the defendant demu rred on the following grounds:

1. That the case stated entitled the complainants to no relief. 2. That the person insured was not sole owner of the insured property and had no interest therein whatever. 3. That said contract of insurance was wholly null and void. 4. That the bill did not show that defendant would have entered into a contract of insurance of the said property with any other person than said Eudora. 5. That a contract of insurance is a purely personal one, that to reform the contract as prayed, so as to indemnify others than the person contemplated was not to reform, but to make a new contract. 6. That if, as alleged, the defendant's agent when contract was made did not know or had forgotten that the person insured was then dead, and said Taylor was aware of such fact, then there was no uniting of minds as to the person insured or sought to be insured, and, therefore, no valid contract capable of reformation. 7. That if it was true "that said J. D. Taylor believed said Barnes then and there knew of the death of said Eudora and relied upon such knowledge of her death and upon said agent's superior knowledge and ability as to the proper form of writing insurance policies, of which said Taylor was wholly ignorant, he, the said Taylor, in requesting the renewal of said insurance did give to said Barnes no special instructions for the making out of said policy, and therefore by accident, inadvertence and mistake of said Taylor and said Barnes, who it since appeared had no knowledge or had forgotten said death of said Eudora, the said policy of insurance for the year 1893, on the described building was renewed in the name of the said Eudora Taylor, she being then dead, and not in

the name of her estate or heirs, or of said J. D. Taylor as agent or trustee, as said Taylor intended it should be and supposed it had been until just before the bringing of this suit, he not having read said policy by accident and inadvertence," then said complainants show a mistake of facts arising from the negligence of said complainant Taylor when the means of knowledge were readily accessible and the party complaining did not exercise the degree of diligence which may be fairly expected from a reasonable person and that said contract is incapable of reformation. 8. That it does not appear that the writing sought to be reformed deviates from the understanding and intention of both parties to its execution. 9. If said contract was valid and capable of reformation so as to speak of the time when made, then by its provisions no suit or action on it for any loss shall be sustained until after full compliance by the insured of all foregoing requirements, nor unless commenced within twelve months after the fire; and it appears from the allegations of the bill that more than twelve months elapsed after the fire before the commencement of the suit. 10. That there is a misjoinder of parties complainant.

Upon the filing of this demurrer the complainants amended their bill, which amendment charged that said Barnes as agent of said defendant had actual knowledge of the death of said Eudora Taylor at the time of writing the said insurance policies of 1893 and 1894, but that at such time he, said Barnes had forgotten such fact of her death and for this reason made such policies in the name of Eudora Taylor instead of in the name of the heirs of her estate, or of said J. D. Taylor as agent, trustee or attorney, as such agent would have written the same but for such inadvertence and forgetfulness of said Barnes.

Whereupon the defendant amended the seventh ground of its demurrer to conform to the amended allegations of the bill making the same point therein of negligence on the part of J. D. Taylor as the cause of the error of said Barnes, and that said amended allegations showed negligence on the part of the complainants, and, as amended, applied the demurrer to the entire bill as amended. On the hearing this demurrer was sustained and the complainants' bill dismissed, and from this decree the complainants have appealed to this court.

*W. H. Jewell,* for Appellants.

*A. W. Cockrell & Son,* for Appellee.

TAYLOR, C. J. (*after stating the facts.*)

The Circuit Judge erred in sustaining the defendant's demurrer and in dismissing the bill. The allegations of the bill, if sustained by proof, make a case entitling the complainants to a recovery as prayed. That there could not properly be a recovery at law upon the contract of insurance in its present form as made to Eudora O. Taylor, deceased, she being dead at the time of its execution, without a reformation thereof in equity, is sustained by the authorities. Sun Insurance Company v. Greenville Building and Loan Association, 58 N. J. L. 367, 33 Atl. Rep. 962; Oliver v. Mutual Commercial Marine Ins. Co., 2 Curtis, 277; Phœnix Fire Ins. Co. v. Hoffheimer Bros. & Co., 46 Miss. 645; Hartford Ins. Co. v Haas, 87 Ky. 531, 9 S. W. Rep. 720; Balen v. Hanover Fire Ins. Co., 67 Mich. 179, 34 N. W. Rep. 654; Globe Ins. Co. v. Boyle, 21 Ohio St. 119. The case as made by the bill entitles the com-

plainants to a reformation of the policy. No specific instructions were given by J. D. Taylor, acting as the agent of the owners in procuring the insurance, as to whom the policy should be made; his sole instruction on that subject being that he desired the insurance renewed, and he relied upon the agent of the defendant company, who had been for years insuring the property, to prepare and execute a *valid policy* that would effectually *bind the company* and *insure the property*. The agent had knowledge of the fact that Eudora O. Taylor, the former owner of the property, was dead at the time of the issuance of the policy, yet, from momentary forgetfulness of the fact at the time, inadvertently made it out directly in her name, as previous policies on the same property issued by him had been so made. Indeed the next preceding policy on the property issued by the same defendant company through the same agent, that ran its full time and had expired, and for which the defendant received and retained full premium, was likewise through inadvertence made directly to the said Eudora O. Taylor, she being dead at the time of its issuance. J. D. Taylor, the husband, acted all along as the agent for his wife Eudora during her life in procuring the insurance of the property he lived upon it with her and their children up to the time of her death, and afterwards continued to reside there with his children from the time of her death until its destruction by fire, there being no change in the occupancy, control and possession thereof. The same agent of the same defendant had always prior to Eudora's death dealt personally with him in effecting insurance upon the property, so that there can be no just claim of objection on the part of the defendant company in making the contract of insurance as to the *personnel* of the owner or own-

ers of the property. At the time of the issuance of the policy in question and of previous policies thereon the property was in the possession, control and occupancy of the husband and father, J. D. Taylor, and of his children, and continued to remain so until its destruction by fire. The defendant's agent, with knowledge of these facts and of the death of Eudora, its former owner, and of the descent by law of the title and ownership of the property to her husband and children on her death, consented to *renew the insurance thereof*, and retained the money consideration for such insurance. Under these circumstances no other just of equitable construction can be placed upon the *intention* of the defendant company in making this contract of insurance than that its intention was to *effectually and legally bind and obligate* itself to pay to the legal owners of the property, whosoever they might be, the sum of money contracted for in case of destruction by fire of the specified property. This intention it could not legally or effectually carry out by making a void contract with a party deceased at the time of its execution, and it does not justly or equitably lie in its mouth, after the destruction of the property insured, and after its receipt and retention of the consideration paid to it for a valid and binding contract of insurance, to say that it is true I got your money, but I issued to you a void contract for it by which I am not bound or obligated in any way. Oliver v. Mutual Commercial Ins. Co., 2 Curtis, 277; Cook v. Westchester Fire Ins. Co., 60 Neb. 127, 82 N. W. Rep. 315; German Fire Ins. Co. v. Gueck, 130 Ill. 345, 23 N. E. Rep. 112; Fitchner v. Fidelity Mut. Fire Asso., 103 Iowa, 276, 72 N. W. Rep. 530. And failure of the insured to read a policy, even where he had opportunity for so doing, does not amount to such laches on his

part as will debar him from having such policy reformed for mistake therein. See last authority *supra*. The policy provided that no recovery should be had thereon unless suit thereon was brought within a year from the destruction of the property and the bill was filed subsequently to the expiration of this year, but the bill effectually avoids this bar by showing that the complainants in ignorance of the mistake in the name of the insured in the policy brought their suit at law within the year upon the policy, and at the trial of that suit for the first time discovered such mistake through the pleadings therein of the defendant company, by which they were forced to take a *non suit* in such action at law, and that they at once, upon such discovery, filed their bill for the double purpose of reformation of the policy and recovery thereon as reformed; that the defendant's agent, without their knowledge or consent, a few days before the destruction of the property by fire, obtained possession of the policy from a mortgagee of the property in whose possession it was, and unauthorizedly canceled it without the knowledge or consent of the true beneficiaries of such policy, returning the then unearned *pro rata* part of the premium to such mortgagee, who had no authority to receive it, and without giving the five days notice of the intended cancellation of such policy as stipulated for in such policy, and that the defendant company withheld the possession of such policy thus obtained and refused to deliver it or a copy thereof to complainants until after the suit at law thereon was begun, and withheld from complainants all information relative to the terms and conditions of such policy. Under these circumstances if true, there was no bar by the limitation expressed in the policy. Union Cent. Life Ins. Co. v. Phillips, 41 C. C. A.

263, 102 Fed. Rep. 19; Doughtery v. Metropolitan Life Ins. Co., 3 Hun. App. Div. 313. The defendant company by unconditionally denying any liability upon the policy waived the proofs of loss provided for in the policy. German Fire Ins. Co. v. Gueck, 130 Ill. 345. 23 N. E. Rep. 112.

The attempted cancellation of the policy under the circumstances charged in the bill, if true, was a nullity and did not release the defendant company from obligation to pay the subsequent loss

There is no merit in the ground of the demurrer asserting a misjoinder of parties complainant. The bill shows that the policy of insured in question was made payable to Eudora O. Taylor, loss if any, conditionally payable to Eliza Kimbrough, a mortgagee. The bill shows also that the policy was for $1,250, and the mortgage for only $400. Under these circumstances the personal representative of the mortgagee, she being dead. was not only a proper, but a necessary, party complainant conjointly with the heirs at law of Eudora O. Taylor, deceased, and the decree in the case may adjust, and provide for their respective interests in the recovery on the policy. Williamson v. Michigan Fire and Marine Ins. Co., 86 Wis. 393; Home Ins. Co. v. Gilman, 112 Ind. 7, 13 N. E. Rep. 118; Proctor v. Georgia Home Ins. Co., 124 N. C. 265, 32 S. E. Rep. 716; Franklin Ins. Co. v. Wolff, 23 Ind. App. 549, 54 N. E. Rep. 772; Ennis v. Harmony Fire Ins. Co., 3 Bosw. (N. Y.) 516; Lasher v. North Western Nat. Ins. Co., 18 Hun, 98; Sun Mutual Ins. Co. v. Tufts, 20 Tex. Civ. App. 147, 50 S. W. Rep. 180.

The decree of the court below is reversed with directions to overrule the defendant's demurrer to the bill, and for such further proceedings in the cause as may be conformable to equity practice.