CASE 21.—ACTION BY JAMES A. WITHERS AGAINST DAVID
    STITZER TO RECOVER UPON AN ASSIGNMENT OF AN
    INTEREST IN A PATENT PORTABLE HORSE STALL.—
    February 28.

## Stitzer v. Withers

Appeal from Jefferson Circuit Court, Chancery
Branch, (First Division).

SHACKELFORD MILLER, Judge.

Judgment for plaintiff, defendant appeals. Re-
versed.

1. Patents—Contracts—Abandonment—One     who     agreed     to
    advance money for the perfection of an appliance in consid-
    eration of a promise of a half interest in any patent which
    might be obtained thereon, but who abandoned his contract
    and refused to advance money in accordance with his agree-
    ment, on finding, after a time, that the appliance was
    apparently not going to prove a commercial success, was
    estopped to assert an interest in the patent after it was

Stitzer v. Withers.

finally obtained with the assistance of another, and had, unexpectedly to him, proved a commercial success.

2. Same—Improvements—New Inventions—Where a subsequent patent does not infringe a former one, it is independent thereof, and will be regarded as a new patent, and not a mere improvement of the former one.

3. Same—Assignment of Patents—Construction—Certain patent. on a portable horse stall, held, under the evidence, not a mere improvement of a former patent obtained by the same person on a portable stall, but a distinct and independent contrivance, so that no interest therein passed under an assignment by the patentee of an interest in the former patent.

4. Patents—Contracts—Abandonment—Rights of Parties—One who advanced money towards the obtainment of a patent under an agreement for a half interest in the patent when obtained, but abandoned the agreement, should, after the obtainment of the patent through the assistance of another, be repaid money expended by him on the model of the device before his abandonment of the agreement.

C. H. SHIELD, J. B. McCORMACK for appellant.

GEORGE CARY TABB of counsel.

1. Patent covers only what it claims; no more.    (Bates v. Coe, 98 U. S., 31.)

2. If one patent does not infringe another, it is independent of it.    (Stebbins Hydraulic Elevator Co. v. Stebbins, 4 Fed. Rep., 445; Frick v. The Geiser Mfg. Co., 100 Fed Rep., 94.)

3. An assignment of future improvements on a specific patent will not cover a future patent for a different and distinct patent. (Independent Eelctric Co. v. Jeffrey Mfg. Co., 76 Fed. Rep., 981; Am. & Eng. Ency. of Law, 2nd Ed., Vol. 22, p. 426; Bridge v. Excelsior Mfg. Co., 105 U. S., 618.)

4. In an executory contract for the sale of unascertained goods, title to goods does not pass at time of contract.    (Benjamin on Sales, par. 308-313.)

5. When buyer does not pay consideration, if title has not passed, seller has absolute right to do with the property as he pleases.    (Benjamin on Sales, par. 758; Buck v. Timony, 78 Fed., 487; Kittle v. Frost, 9 Blatch., 214.)

LOUIS N. DEMBITZ for appellee.

Stitzer v. Withers.

OPINION BY JUDGE SETTLE—Reversing.

By the decree appealed from in this case appellee was adjudged to be the owner of an undivided half of patent numbered 732,232, for a portable horse stall, issued to the appellee by the United States in November, 1902; the judgment being based upon an alleged assignment claimed by appellee to have been made him by appellant by written instrument of date August 16, 1899. It appears that appellant in 1897 secured a patent, No. 591,792, for a "knock-down horse stall" of his own invention. In 1899 he invented and secured a patent, No. 629,726, for a portable horse stall designed for shipping horses on cars. Before the last patent was issued appellant assigned all of his interest in No. 591,792, except an undivided fifth, and by writing of August 16, 1899, he assigned to appellee a one-tenth interest in patent No. 591,792, and a one-half interest in patent No. 629,726, and also similar interests in any improvements that might be made by appellant on these two patents.

The particular clause of the assignment upon which appellee rests his claim is as follows: "Also a similar interest in and to any and all improvements which I may hereafter make on either of the above patents named, that is I assign and transfer unto the said James A. Withers an undivided one-tenth interest in all improvements I may make on patent issued to me on July 25th, 1899, known as No. 629,726." It appears from the pleadings that appellee's claim is that patent No. 732,232, in which he was adjudged a half interest by the chancellor, is but an improvement upon patent No. 629,726, and that, whether this is or not true, by contract between himself and appel-

lant made before patent No. 732,232 was secured by
the latter it was agreed that it should be deemed an
improvement on patent No. 629,726 within the mean-
ing of the writing of August 16, 1899.

  The defense interposed by appellant's answer is
that patent No. 732,232 is not an improvement on
patent 629,726, but that it is an entirely new,
separate, and distinct invention, and that there
was no agreement with appellee that it should be
deemed such an improvement, but that he offered
appellee a half interest in the new patent, No. 732,232,
provided the latter would pay him (appellant) for
his work in trying to improve the old stall, as he had
theretofore agreed to do, but had not done, and would
pay him for the time he had spent in constructing a
full size stall and model for the new patent and for the
material used therein, and furnish money to secure
the patent and to develop the new stall and put it on
the market. The conditions, the answer alleges, were
agreed to by appellee, and that he did in pursuance
thereof pay appellant $55, but failed and refused to
pay any more, and abandoned the agreement, though
repeatedly urged by appellant not to do so, by reason
of which appellant was forced to seek assistance and
money from others in order to construct his model
and secure the patent thereon; that appellant offered
to one G. W. Wohlgamuth a half interest in his inven-
tion upon substantially the same terms theretofore
made with appellee, which Wohlgamuth accepted,
and after paying appellant in small sums $88.75, in
pursuance of their agreement, he, too, refused to pay
more, and abandoned the undertaking, after which
appellant succeeded in enlisting J. B. McCormick in
the last invention, and, McCormick having furnished

the capital necesary to reimburse him for his work and material in constructing the stall and model and to pay the cost of procuring the patent, appellant assigned him a half interest in the new patent upon the same terms he had offered it to appellee' and Wohlgamuth; that in November, 1902, the new patent, No. 732,232, was duly issued to appellant, and shortly thereafter he and McCormick entered into a profitable contract with the American Express Company, whereby that company adopted the portable stall covered by patent No. 732,232 for use on their lines. The answer further alleges that after this contract was made appellee saw appellant and made claim to an undivided half interest in patent No. 732,232, and upon appellant's refusing to recognize such claim he' instituted this action to enforce it. It appears from the record that appellant, though a person of inventive genius, was without means to secure patents, or put his inventions upon the market, and that this fact was known to appellee when he became interested in his inventions. In addition to the $500 which appellee paid for the one-tenth interest in patent No. 591,-792, and a half interest in patent No. 629,726, he expended about $1,500 in developing No. 629,726. This money was mainly used in buying material for and in constructing about 70 portable stalls under patent No. 629726, some of which were put into cars and tested in shipping stock on different lines of railroad Appellant went to Memphis, New Orleans, and perhaps other places, in trying to introduce them, but it was soon discovered that the stalls were not a success, and both appellant and appellee became satisfied that, unless some means of remedying the defects in the stalls could be found, they would prove

worthless.    The testimony as to what occurred be-
tween the parties after this time is quite conflicting,
but we think the weight of it tends to establish the
fact that appellant was to devote his talent and labor
toward inventing some improvement of the portable
stall covered by patent No. 629,726, that would, if
possible, remedy its defects, and enable it to be placed
upon the market as a useful and profitable invention,
and to enable appellant to live while so engaged appel-
lee was to allow and pay him a salary of $50 a month.
Appellant did at once undertake to accomplish what
was required of him, and on the first of the following
month requested of appellee payment of his salary for
the time he had then worked at the agreed rate of $50
per month.    But appellee refused to pay him any-
thing, saying he would be entitled to nothing until
he had worked a full month.    Thereupon appellant
continued to work until the first of the succeeding
month, when he again demanded of appellee his
salary, which the latter again refused to pay him, not-
withstanding whic_ appellant, though greatly in need
of his salary, remained at work for perhaps another
month, when he was paid in money a part of what was
due him, and given an order for a small sum, and a
few days later paid another small sum, the whole
amounting to $50, only one month's salary, which
seems to be all that he ever received from appellee
under the agreement as to the salary to be paid him.
We think the weight of the evidence further conduces
to prove that after some months of effort to improve
the stall in question appellant came to the conclusion
it could not be done, and that he would desist from
further attempts to do so, and so informed appellee,
who acquiesced in his decision, and that some months

after this decision appellant invented what he claims is a new portable stall, wholly distinct from that covered by patent No. 629,726, of which he informed appellee. Whereupon another and a new agreement was made between them, based upon the conditions as to the furnishing of money by appellee for the purposes hereinbefore indicated, his compliance with which would entitle him to a half interest in the new patent. It appears, however, that only $55 of the money so promised by appellee was furnished by him. It also appears from the evidence that $35 of the $55 furnished by appellee under his last agreement was paid early in May, 1902, yet down to that time appellant had expended in constructing the new model alone $223.

On May 12, 1902, appellant notified appellee in writing that the stall and model would be completed and ready for his inspection on the 17th of May, and on May 19th he saw and in person notified appellee that the stall was then complete and ready for his inspection. Appellee denied that either notice was received by him, yet he filed with his petition the letter containing the first notice. According to the evidence, appellant kept the stall set up and awaiting appellee's inspection from May 17th to September, 1902, but the latter did not go to see it, or inspect it. In September, 1902, appellant, having secured the space necessary for the purpose, exhibited the stall at the State Fair held in the city of Louisville. Appellee was at the fair and met appellant there, but did not inspect the stall or make any inquiry of appellant about it. Thus a period of about six months elapsed between the completion of the model and the issual of the new patent, during which appellee, though

twice notified of the necessity for action on his part, neither saw appellant, manifested any interest in the new stall, or contributed any money to develop it or assist in having it patented.

It also appears from the evidence that the arrangement between appellant and Wohlgamuth was made during the fair, whereby the latter was to assume the undertaking abandoned by appellee, and take the same interest in the new patent to which appellee would have been entitled had he complied with his agreement made with appellant. Being disappointed by the failure of Wohlgamuth to comply with his undertaking, appellant entered into the contract with McCormick, whereby the latter repaid Wohlgamuth the $88.75 he had advanced appellant, and upon the same terms that had been agreed upon between appellant and appellee became a partner in the new invention, furnished the needed funds to develop and have it patented, and received from appellant an assignment of an undivided half interest in the new patent. We are satisfied that appellant would not have succeeded in perfecting the last invention, or in securing the patent upon it, but for the assistance of McCormick, and it is equally certain that but for the energy and business sagacity of the latter the profitable contract with the American Express Company for its use of the new stalls would not have been consummated.

From the evidence as a whole, we are convinced that appellee, on account of his expenditures and the apparent loss of not less than $2,000 in attempting to develop and improve patent No. 629,-726, came to the conclusion that appellant would fail upon the last invention, or, if patented, that it would

prove as unprofitable as the others, for which reason, and after paying $55 to forward the work upon the last, he resolved to expend no more money upon it, and therefore abandoned what he obviously thought a losing venture. If such had not been his decision, he would not have remained away from appellant through the months that followed, or failed in his undertaking to furnish the necessary funds for pushing the work on the last invention or to have it patented. The awakening came, however, when he discovered that appellant had with the assistance of another, not only perfected his new stall and secured a patent on it, but that it was a success, and had been successfully put into use under a contract which gave promise of large profits. Under the facts presented by the record we think appellee's abandonment of the contract whereby he was to receive an interest in the last patent estops him from relying upon that contract, for he will not be permitted to repudiate the contract and yet receive the benefits that would have resulted had he complied with its terms. So if, as contended by him, that contract contemplated that the last stall invented by appellant should be treated as an improvement on patent No. 629,726, though in fact a new and distinct invention, the estoppel would nevertheless be, and is, operative by reason of appellee's abandonment of the contract.

We now come to the consideration of the really vital question in the case. Is patent No. 732,232 an improvement on No. 629,726, or is it an independent and distinct invention? If it is merely an improvement, then clearly appellee was entitled under the writing of August 16, 1899, to the relief allowed by the judgment appealed from, independently of any

subsequent agreement between himself and appellant. Before the trial in the lower court of the case at bar it was before Chief Justice Hobson of this court, upon a motion to dissolve a temporary injunction granted by the chancellor. The motion to dissolve the injunction was sustained by the Chief Justice; his reasons therefor being stated in a written opinion, from which we quote the following: "The real question in this case is, therefore, whether the last patent is an improvement on the preceding patents, within the meaning of the contract of assignment. In patent No. 629,726 the stalls were constructed with four parts, each having four grooves in which the plank constituting the sides and the ends of the stall were placed, the posts being held together by an iron rod tightened with a screw near the bottom and overhead by a timber extending from the top of one post to the other, and from the center of this timber a brace extended from the top of the car. The trouble with this stall was that horses struck their heads against the overhead timber; thus seriously injuring them when from any cause frightened on the journey. Another defect was that the stalls consisted of so many parts, and took so long to put them up. The last patent, No. 732,232, issued in November, 1902, used tubular telescoping posts which might be extended so as to be set in the floor of the car and roof; thus doing away with the overhead timbers. The sides and ends of the stalls were fastened together so that they might all be set up at once, thus avoiding having so many pieces to be handled. The method of attaching them to the posts was by hooks and rings, and not by grooves, as in the former patent. The essential idea of patent No. 629,726 is in the

grooved posts, and in the way they were fastened together.  The essential idea in the last patent (No. 732,232) is in the tubular telescoping posts and the method of fastening the other parts of the stall to them.  A stall for a horse is necessarily a quadrangular box.  It must under any device have posts and sides.  Both patents are intended to accomplish the same result, and the same is true of every patent issued for portable box stalls.  The last patent is not an improvement on the former within the meaning of the patent laws, simply because it is designed for the same purpose, for, if this were true, then all patents for box stalls and the like would be but improvements on the first.   The rule is that, if one invents only an improvement on a machine or other thing, he is not entitled to a patent on the whole machine or thing.  Odiorne v. Winkley, Fed. Cas. No. 10,432.  An improvement, as understood in the patent law, embraces the original and adds thereto or alters it.  Page v. Ferry, Fed. Cas. No. 10,662.  The assignment of an improvement gives no interest in the original patent.  Leach v. Dresser, 69 Me., 129; Foss v. Herbert, 2 Fish Pat. Case 31, Fed. Cas. No. 4,957.  A device securing the same result, but operating on a different principle, is not an infringement of a former patent (Bridge v. Excelsior Mfg. Co., 105 U. S., 618; 26 L. Ed., 1191), and is not covered by an assignment of the patent with an agreement to assign all improvements made on it.  Stebbins Hydraulic Elevator Co. v. Stebbins (C. C.), 4 Fed., 445; Puetz v, Bransford (C. C.), 31 Fed., 458; Jeffrey Mfg. Co. v. Ind., Electric Co., 83 Fed., 191; 27 C. C. A., 512; Id. (C. C.) Fed., 981.  Under the record as presented the plaintiff has not shown such a state of case as warrants a

preliminary injunction which may be of great injury
to the defendant  *   *   *'' We think the foregoing
quotation from the opinion of Chief Justice Hobson
aptly presents the differences between patents Nos.
629,726 and 732,232, and readily proves their separate
and distinct character, and the same is, we think,
also established by the weight of the testimony of
the expert witnesses whose depositions appear in the
record. It is a fundamental principle in the law of
patents that, if one patent does not infringe another,
it is independent of it. From the appearance of the
models of the two patents shown us, as well as the
testimony of the expert witnesses, we are convinced
that the application of this test will demonstrate that
the latter patent is not a mere improvement on the
other, but a wholly distinct and independent con-
trivance.

A number of cases besides those mentioned may be
cited as illustrating the principle announced; one of
the most notable being Stebbins Hydraulic Elevator
Co. v. Stebbins (C. C.), Fed., 445. In this case the
facts in brief were: That the defendant, Stebbins,
was the owner of patent No. 132,111, of date October
8, 1872, for improvements in hydraulic elevators. On
the same date patent 132,112, for improvements in
safety devices for hydraulic elevators, was also issued
to him. In the following month Stebbins, and others
associated with him, assigned these patents to the
plaintiff, Stebbins Hydraulic Elevator Company; the
assignment containing this provision: ''Together with
the right to modifications, improvements or reissues
thereof, and all other or similar patents in the United
States which may be issued to us, or any one of us,
directly or indirectly, in or of, or in aid of the

improvements above specified.'' In February, 1876, letters patent No. 172,896, and in August following letters patent No. 181,113, were issued to Stebbins for improvements in hydraulic elevators. Suit was brought by the assignee of the two former patents for infringement and to compel specific performance of the contract of assignment. It happened that only one expert witness testified on each side. That of the defendant expressed the opinion that the invention set forth in the two patents were entirely different in construction and mode of operation in every respect, except the fact of their having two cylinders and their pistons to assist each other in lifting the load. The plaintiff's expert witness testified that the two inventions were substantially alike. The following excerpt from the opinion in the case will show it was held that the later patents, notwithstanding apparent similarity in design, mechanism, and use to the first two patents, did not infringe the former ones: ''An examination of the specifications in connection with the specifications in patent No. 132,1111 shows that the views of the defendant's expert must prevail over those of the plaintiff's expert, and that the doctrine of mechanical equivalents cannot be successfully invoked in this case in favor of the plaintiff. And, further the considerations before stated as reasons why an apparatus constructed according to patent No. 172,896 does not infringe patent No. 132,111 go to show in connection with the considerations set forth in the testimony of Mr. Elliott, just cited, as to patent No. 181,113, that an apparatus constructed according to patent No. 181,113 does not infringe patent No. 132,111; and further conceding, for the purpose of this case, that the assignment of November 4, 1872,

assigns the right of improvement subsequently invented or patented by the defendant, in or of, or in aid of, the inventions or improvements patented by patent No. 132,111 and patent No. 132,112, it is manifest that the reasons before set forth as showing that the inventions embraced in patent No. 172,896, and in patent No. 181,113, do not infringe patent No. 132,111, are equally cogent to show that such inventions are not improvements in or of, or in aid of, any of the inventions of improvements patented by patent No. 132,111.'' Frick v. Geiser Mfg. Co., 100 Fed., 94; 40 C. C. A., 291. We do not think the authorities relied on by counsel are in conflict with the authorities, supra, or the views herein expressed. In two of these (Littlefield v. Perry, 21 Wall., 226; 22 L. Ed., 557, and McFarland v. Mfg. Co., 53 N. J. Law, 649; 33 Atl., 962; 51 Am. St. Rep., 647) the application for the last patent was in express terms for an improvement of the former, and in the first the parties to the assignment also agreed that the last invention should be treated as but an improvement of the first.

Upon the whole case our conclusion is that the chancellor erred in adjudging to appellee a half or any interest in patent No. 732,232. We think, however, he should be repaid the $55 he expended on the model of patent No. 732,232 before his abandonment of the agreement he made with appellant to furnish the money for its construction and to procure the patent therefor, and this sum, as appears from the record, appellant tendered him before suit, but he refused to accept it.

For the reasons indicated, the judgment is reversed and cause remanded that it may be set aside, and in

lieu thereof such a judgment entered as will conform to the opinion herein.

Petition for rehearing by appellee overruled.