KELLY, RICHARD, Associate Judge.
The Manhattan Fire and Marine Insurance Company appeals a final judgment entered pursuant to a jury verdict in favor of James P. Sommers and Robert E. Mess-mer, doing business as Sommers & Mess-mer Construction Company, a partnership in the sum of $9,109.31 plus $3,300.00 attorneys fees.
At trial it appeared that the Sommers and Messmer partnership had contracted to erect an evaporative shade house for Fer-Mar Flowers, Inc. On 23 August 1964, while construction was in progress one of the partners, in an effort to obtain builders risk insurance, contacted one Arthur Lewis. Mr. Lewis had written policies for the partnership in the past but on this occasion referred the business by telephone to another insurance solicitor, one James F. Langhart.
Mr. Lewis testified that he gave what information that he had to Mr. Langhart and “asked him to contact Mr. Sommers if he needed any further data.” Mr. Lang-hart later telephoned Mr. Sommers in order to ascertain the legal description and the type of construction. Thereafter on 25 August 1964 Langhart notified Lewis that the risk was bound by the defendant company.
On the same day it became evident that winds of hurricane strength, had appeared in the Caribbean area, but Langhart testified that as of then no watch warnings or gale warnings had been posted and “nobody knew what direction it was going.”
On 27 August 1964, before the policy had been received by Mr. Sommers, winds accompanying the storm caused extensive damage to the incomplete structure. For some reason, unclear in the record, the policy issued in the name of Sommers and Messmer Construction Company, Inc., instead of to the Sommers and Messmer partnership. Although Sommers and Messmer had previously formed said corporation, it was not active and the corporation had no insurable interest in the subject construction project.
After the storm the loss was immediately reported to the defendant and on 2 September 1964 one, Lee Roberts, an insurance adjuster for Manhattan, inspected the site and took photographs of the damage. The adjuster computed the loss in the sum of $9,185.00 less $100.00 deductible and prepared a Proof of Loss form in said sum which was signed by Mr. Sommers. Mr. Roberts did not inquire as to the name in which the policy had issued but recommended that repairs be undertaken. Thereafter the defendant denied liability on the policy and on 4 September 1964 the adjuster for Manhattan contacted Mr. Som-mers and suggested that the repairs be discontinued because of a problem that developed regarding the policy.
By letter dated 13 October 1964 written by counsel for Manhattan, the plaintiffs were informed that Manhattan did not consider that the policy had been effective. Thereafter suit was filed in which the Sommers and Messmer partnership sought *452 damages on the contract of insurance. The case proceeded to trial and the jury returned with a verdict for the plaintiffs. By motion for new trial the defendant Manhattan asserted that the court erred in failing to grant a motion for directed verdict because the plaintiffs were not the insured named in the policy. In denying the motion, the trial judge stated in pertinent part:
“Factually, the partnership had a contract to build an evaporative shadehouse; while construction was in progress one of the partners, in an effort to obtain builders risk insurance on the construction job, contacted one Arthur Lewis to obtain the insurance; Lewis contacted defendant, Emery-Richardson & Associates, Inc., an agent of defendant, The Manhattan Fire and Marine Insurance Company, and had the policy written. There is some doubt as to how the policy came to be written in the name of Sommers and Messmer Construction Company, Inc.,, instead of the partnership. However, the evidence seems clear that it was a mistake. The corporation was not active; the partnership had the contract and was doing the work, and plaintiff intended the insurance to be in the name of the partnership. No one seems to know how it was written in the name of the corporation. The policy was mailed by the agent and not received until after the loss had occurred.
“Suit was originally brought in the name of the corporation, but subsequently amended to name the partnership as plaintiff. The facts proven at trial would seem to warrant reformation, and though even in this day of enlightened pleading and practice, it might be more proper to first reform the policy and then sue for breach, still, as said in Great American Ins. Co. v. Johnson, 4 Cir. 1928, 25 F.2d 847:
“ ‘but the question here is not whether it was error to try an equity case as an action at law, but whether this Court should hold such error to be prejudicial and award a new trial, where all of the evidence in the lower Court is before us, where it appears that the case was fully developed, and where the relief obtained at law is exactly what upon the record should have been awarded in equity? We think not. In such case justice has been done, and Courts exist to do justice, not to furnish a forum for intellectual skill or prowess.’
“The defendant was represented by able counsel who asserted every possible defense; the jury found for the plaintiffs and the Court feels substantial justice was accomplished.”
Defendant’s main point concerns whether or not the trial judge erred in refusing to grant the motions for directed verdict on the ground that the plaintiffs were not the insured named on the policy. Defendant contends that the policy should have been first reformed in equity and that reformation cannot be effected in a law action, citing Taylor v. Glens Falls Insurance Company, 1902, 44 Fla. 273, 32 So. 887.
In the Taylor case, supra, a husband, wife and children resided in a home titled in the name of the wife. After the death of the wife, the insurance agent through mistake or inadvertence continued to renew the policy in the name of the wife. The husband and heirs at law had not seen the policy and had no knowledge as to whom the policy was payable. After the loss, the mistake was discovered and the husband and heirs at law filed an action in equity to reform the policy. The chancellor sustained defendants demurrer and dismissed the suit. In reversing the decree, the Supreme Court ruled that the facts were sufficient to entitle the complainants to reformation of the policy by a court of equity. The particular issue present in the instant case was not before the Court in Taylor. Moreover, the Taylor decision was rendered long prior to the advent of *453 the .Rules of Civil Procedure, which rules have tended to merge many of the distinctions between law and equity.
On the facts adduced at trial there is no question but that the appellees could have obtained equitable reformation. Accord. Phenix Insurance Company v. Hilliard, 1910, 59 Fla. 590, 52 So. 799; Southern States Fire Insurance Co. v. Vann, 1915, 69 Fla. 544, 68 So. 645.
In denying the motion for new trial, the trial judge relied on the decision in Great American Insurance Co. v. Johnson, 4 Cir. 1928, 25 F.2d 847 (reh. den. 27 F.2d 71, cert. den. 278 U.S. 629, 49 S.Ct. 29, 73 L.Ed. 548). In the Great American case, supra, the insurer was requested to issue a fire insurance policy for the owners of a garage building, which persons also owned all of the stock of Home Auto Company, a corporation occupying the building. Instead of issuing the policy in the names of the owners of the building, the policy was written in the name of Home Auto Company by mistake. Shortly thereafter, the building was destroyed by fire and the mistake was not discovered until the loss was sustained. The owners instituted an action at law in their own names to recover on the policy. As in the instant case the motion for a directed verdict was denied and judgment was rendered for the plaintiffs.
In affirming, the United States Circuit Court of Appeals recognized that the trial judge erred in trying the case as an action at law but found that had plaintiffs filed in equity, they would have been entitled to a decree of reformation to be enforced as reformed against the defendant. The opinion related:
“There can be no question that the naming of the Home Auto Company as insured in the policy, instead of plaintiffs, was the result of mutual mistake which occurred through the fault of the agent of defendant who wrote the policy. Johnson intended that the policy should be issued to himself and Parks. He applied for such a policy. Miss Switzer promised that, if she did issue the policy, she would notify him in the afternoon, and it is clear that he thought that the policy had been issued as applied for. Miss Switzer decided to issue the policy, and the evidence clearly shows that she intended to issue it properly in the name of the owner or owners of the property. She called Johnson’s place of business to see how this should be done, and received erroneous information from an employee of the corporation, who had no authority with respect to the insurance. As a result of the information thus obtained she issued the policy to a corporation which owned no interest in the property, instead of to plaintiffs, who owned it.
“There is no reason on the evidence to believe that she would not have issued it to the plaintiffs, had she not been mistaken as to the ownership, just as readily as she issued it to the corporation the stock in which was owned by them. She thought that the policy protected against fire the owner of the property. Johnson thought that the owners were protected by it. The minds of the parties met on the proposition that the defendant was to insure the owners of the property against loss by fire. That the policy as issued and delivered insured a corporation which had no interest in it was unquestionably the result of mutual mistake, due on the part of the agent of the company to the fact that she received erroneous information, on the part of Johnson to his understanding that the policy was to be issued to him and Parks, and that he was to be notified if it was not so issued. To allow the company to take advantage of such a mistake would be unconscionable, and there is no doubt that equity can and should grant relief under such circumstance.” (Emphasis added.)
Regarding the 'issue as to whether or not the case should be reversed for the plaintiff’s procedural omission to first ob *454 tain reformation in equity, the court noted that the case was fully heard and to reverse merely because the action was tried on the law side before a jury would be to “hark back to the outworn technicalities of a day that is dead.” The court further stated:
“The distinction between law and equity has not been abolished by the recent statutes regulating procedure and a party is entitled to have his case tried on the proper side of the docket; but the question here is not whether it was error to try an equity case as an action at law, but whether this court should hold such error to be prejudicial and award a new trial, where all of the evidence in the lower court is before us, where it appears that the case was fully developed, and where the relief obtained at law is exactly what upon the record should have been awarded in equity? We think not. In such case justice has been done, and courts exist to do justice, not to furnish a forum for intellectual skill or prowess.
“Where a case had been tried in equity which should have been tried at law, and the rights of the complaining party have been preserved by timely exceptions, a different situation is, of course, presented; for there the complaining party has been denied a right guaranteed him by the Constitution, the right of trial by jury. Where a suit in equity has been tried at law, however, no such situation is presented. No right of jury trial is involved, and on appeal the case is before a court which has the power to review the facts, as well as the law. If the case has not been properly developed in the court below, it can, of course, be remanded for the taking of additional testimony; but where, as here, it has been fully heard, we think that this court has power to dispose of it upon the record presented, and should do so. If the decision of the lower court in such case accords with what we deem the rights of the parties in equity, the error in trying the case at law should be treated as harmless, and the judgment affirmed.” (Emphasis added.)
For similar cases see Logue v. Duchene, 1932, 185 Minn. 337, 241 N.W. 51; Beach v. United States Fidelity and Guaranty Co., 1962, 205 Cal.App.2d 409, 23 Cal.Rptr. 73.
Applying the rationale for the Great American case, supra, we find no harmful error. The minds of the parties had met on the proposition the defendant would insure the builders of the evaporative shade house. The defendant agreed to^ insure that risk; the plaintiffs believed they were covered; and, the fact that the policy subsequently issued in the name of the corporation resulted from mutual mistake. The case was fully heard before a court and jury and justice has been obtained.
Having found no prejudicial error as to the remaining points, the judgment of the lower court is accordingly affirmed.
Affirmed.
CROSS and REED, JJ., concur.